IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States of America

v.                                             Case No 1:26-MJ-68

Horace Clark

### Defendant's Motion for Release

Horace Clark, through counsel, respectfully requests the court release him pending the disposition of his case, pursuant to 18 U.S.C. § 3142(c). Though Clark has a criminal record that includes a conviction for voluntary manslaughter, that conviction is his only felony. Moreover, while on supervision for that felony, Clark has been steadily employed and otherwise has perfectly complied with the conditions of his supervision. And while his current charge is for the possession of a firearm, he is not alleged to have used, brandished, or fired the firearm. A combination of conditions of release can reasonably assure the safety of the community as well as Clark's presence in court. As such, he moves for release on home detention and placed into the custody of his mother, Carmen Clark.

### Procedural Posture

Clark was arrested on March 20. Shortly after his arrest, he was transported to the Psychiatric Institute of Washington and was admitted and treated for several days for emergency mental health care. His initial appearance in Superior Court was on March 27. On March 30, the Superior Court conducted a preliminary hearing and found that Clark rebutted the local presumption of detention, but nonetheless still ordered him held pending trial. A complaint was filed in this court on March 30, and Clark's initial appearance was held on March 31, and his detention hearing is scheduled for April 3.

1

**Legal Standard**

The Bail Reform Act of 1984 provides that a defendant be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. 3142 (b) and (c)(1)(B). As a general rule, courts should refuse to release defendants pretrial "[o]nly in rare circumstances" and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405 – 06 (9th Cir. 1985) (Kennedy, J). Any "[d]bouts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405. "In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("[d]etention until trial is relatively difficult to impose").

The government bears the burden to demonstrate either by a preponderance of evidence that the defendant's release poses a serious an unmitigable risk of flight, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985). The D.C. Circuit reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir.

1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community).

In fashioning a release or detention order, the court examines the following four factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger to the community were the accused released. None of those factors is dispositive, and when weighed in this case, the factors support releasing Clark pending his trial.

**The government cannot meet its burden to prove that Clark's release poses an unmitigable serious risk of flight or danger to the community.**

Though the government cites both to serious risk of flight and danger to the community, none of its arguments support any finding that Clark poses a serious risk of flight. And all of its arguments that Clark poses an unmitigable danger rely on hypothetical, rather than actual threats (as required by *Munschel*).

A. *The nature and circumstances of the offense do not warrant detention.*

Clark is charged with one count of violating 18 U.S.C. § 922(g) for allegedly possessing a firearm found inside a bag in the front seat of the vehicle he was driving. He is not alleged to brandished, used, or threaten to have used the firearm. Importantly, he also told the police that he had the firearm. He did not flee from police nor did he attempt to hide the fact that he possessed the gun. His honesty and candor to the police helps to demonstrate that he could follow conditions of release set by this court.

The government relies on two arguments to claim that this factor warrants release: that the maximum punishment for this crime is up to fifteen years in prison, and that possessing a firearm is inherently dangerous. However, neither supports a finding that release on conditions poses an unmitigable or articulable danger to the community.

3

First, although the maximum punishment for this offense is up to fifteen years, counsel calculates Clark's recommended guideline sentence, should he plead guilty and accept responsibility, as at most 30 – 37 months.[1] This range is far below the maximum penalty and does not support a finding that he is likely to abscond.

Second, although carrying a firearm in the community may pose a danger, none of the government's arguments point to any specific or articulable danger to any person. The government first cites to *Blackson* to claim that mere possession supports a finding that weighs in favor of detention. But in that case, Judge Howell found that the absence of evidence of use of the firearm was outbalanced by other factors, including that the firearm was equipped with an extended magazine and found on the defendant's person. *See United States v. Blackson*, 2023 WL 1778194 at * 7 – 8 (D.D.C. Feb. 6, 2023). Neither of those factors is present here. The government also cites to *Kent*, which was decided prior to *Munschel*, where the court merely cited to other district court decisions finding that carrying firearms has the potential for or involves the risk of violence. *See United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020). But the government has failed to argue that Clark's alleged possession of a firearm presents any specific or articulable danger to any person or the community, as opposed to a hypothetical one. More importantly, the government has not argued how any such danger could be mitigated by conditions. Clark proposes that he be released on home detention, which would restrict him largely to his residence, which would largely nullify the government's hypothetical concerns.

Though charges involving the possession of firearms permit the government to seek detention, they do not carry a presumption of detention. Thus, the presumption is that those individuals should be released. And many judges in this court have released individuals

---

[1] That calculation assumes Clark's prior conviction for voluntary manslaughter counts as a prior crime of violence, with an adjusted offense level of 17 and a criminal history category of III.

charged with possessing firearms. *See*, *e.g.*, *United States v. Abass*, No. 25-cr-79 (defendant allegedly fled and tossed firearm; drugs found in search of his person); *United States v. Gaskins/Gaines*, No. 25-cr-39 (both defendants released; both alleged to have fled and tossed firearms); *United States v. Belton*, No. 25-mj-51 (defendant charged with 924(c) and possession with intent to distribute); *United States v. Robinson*, No. 24- cr-95 (defendant fled from police; on probation at the time of arrest); *United States v. Yates*, No. 24-cr-89 (defendant charged with 924(c) and possession with intent to distribute cocaine; alleged machinegun switch); *United States v. Griffith*, No. 24-cr-56 (defendant fled from police); *United States v. Wiggins*, No. 23-cr-109 (defendant fled from policed and tossed firearm; firearm fitted with a "giggle switch"); *United States v. Jones*, No. 23-cr-154 (defendant fled from police; case later dismissed after suppression hearing); *United States v. Hicks*, No. 19-cr-288 (firearm allegedly tossed). These are merely a few of the many cases in which the nature and circumstances of the offense—sometimes involving conduct much more egregious than in this case—did not carry the day.

B.  *The weight of the evidence does not support a finding that release poses an unmitigable risk of flight or danger.*

Clark understands that the evidence against him is strong. He admitted to the police that he knew there was a firearm in his vehicle, and police found it exactly where he said that it would be. The government urges the court to treat this factor as a check box: if the evidence against the defendant is significant, the government would argue that favors detention. Not so. The Bail Reform Act requires the court to analyze this factor in determining whether there are conditions to reasonable assure appearance and community safety. *See* 18 U.S.C. § 3142(g). Significant evidence may support a finding that the defendant poses a serious risk of flight when the likely penalty for the offense is high—not so here, as

the recommended guideline range of imprisonment is around three years of prison time. And significant evidence may support a finding that the persons release poses an unmitigable danger when the evidence demonstrates the defendant was violent—not so here where the only allegation is the nonviolent possession of a firearm. The fact that the government's evidence is strong does not, without more, support either release or detention.

*C. Clark's history and characteristics, while mixed, do not support a finding of unmitigable danger to the community.*

Clark is a lifelong resident of northern Virginia who has several family members living in the greater DMV area. He currently lives with his sister and mother in Manassas, Virginia. His mother is willing to serve as a third-party custodian, and she intends to be at Clark's detention hearing provided her transportation to the district does not fall through. She is currently unemployed, though Clark's sister is employed at a local grocery store. Clark has two children, aged 11 and 8, both of whom live with their mothers—one in Virginia and one in North Carolina. Clark sees his oldest daughter nearly every day, as she lives close by, and is regularly in contact with his younger daughter by phone.

Clark is currently employed full time with Hard Hat Construction building data centers. He works from 6:00 am – 2:00 pm Monday through Friday, though he is able to pick up additional hours on occasion. His mother reports that he regularly leaves home around 5:00 am to get to his job on time. He recently purchased the vehicle he was driving when he was arrested, and was proud that he was able to do so. Prior to working at Hard Hat, he was employed with a trash collection company for one year. Before that, he worked at Good Will.

The government claims that Clark's criminal record "demonstrates several failures to comply with release conditions," *See* ECF No. 6 at 9—not so. The government cites to low-level driving offenses and one contempt charge for failing to appear for such charges. Those offenses are not serious enough to warrant being scored when calculating a person's criminal

6

history under the guidelines. *See* U.S.S.G. §4A1.2(c)(1). As such, they ought to be of little consequence in determining a person's release or detention. Additionally, the government does not offer any facts beyond the mere convictions to support its claim. Clark does have two convictions that involve allegations of violence, though both are misdemeanors. One is from 2014—twelve years ago—and the other is from 2017. Both resulted in minimal sentences, and the government has not alleged any facts from those convictions that support finding Clark's release poses an unmitigable danger to the community.

The Court is likely to be understandably troubled by Clark's conviction for voluntary manslaughter—a conviction for which he was on probation when the instant offense occurred. However, the government has not identified that Clark ever (aside from the current charge) violated that probation. That probation was scheduled to end in June of this year, and no violations of probation have been filed. Indeed, Clark performed so well on probation that he was transferred to the operations logistics unit—which essentially allows Clark to "check-in" remotely on the twelfth of each month. He reports not having missed a single visit or failed a single drug test.

The circumstances in which Clark's conviction occurred should give the court pause when relying on it. First, available contemporaneous news reports show that Clark did not plead guilty to the offense, but rather plead pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). *See* Julie Carey, NBC, *Prosecutors say police handling of evidence led to plea in Marine murder case*, July 7, 2023, available at https://www.nbcwashington.com/news/local/northern-virginia/prosecutors-say-police-handling-of-evidence-led-to-plea-in-marine-murder-case/3381136/. The statement of facts provided by the government was never admitted to or signed by Clark. Nor does it provide any source of information for any of the statements other than Clark was seen driving a vehicle and parking next to the decedent's truck. Finally, the fact that Clark received a

sentence of time-served and probation should cast significant doubts on the strength of the evidence in that case.

### D. Any danger posed by Clark's release can be mitigated by conditions.

The government's argument that Clark's release poses an unmitigable danger essentially boils down to three facts: he possessed a firearm; he did so while on probation; and he has a prior conviction for voluntary manslaughter. However, the government does not argue how conditions can ameliorate the hypothetical concern to the danger to the community. Clark is proposing that he be placed on home detention, with an ankle monitor, and that his mother be his third-party custodian. Clark would only be permitted to leave his residence for a select few authorized activities and his movements would be surveilled by a GPS device. Clark's positive performance on probation shows that he can and has followed conditions of release. Those conditions can meaningfully address any concerns posed by his release pending trial.

### Conclusion

Conditions of release can reasonably assure the safety of the community and Clark's appearance in court. As such, the Court should release him pending his trial. Though his charge is serious, Clark is not alleged to have used, brandished, or threatened to use the firearm he is charged with possessing. Though he has a serious conviction, he has been supervised for nearly three years by Virginia probation and is not alleged to have otherwise ever violated that probation. He has strong family support, is employed, and was calm, cooperative, and honest with law enforcement during his arrest. He does not belong among the narrow group of pretrial defendants who should be detained pending trial.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

*/s/ Benjamin Schiffelbein*
Benjamin Schiffelbein
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
Benjamin_Schiffelbein@fd.org

9